## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

U.S. ASIA GLOBAL, INC.

      Plaintiff,

vs.                                No.

GLOBAL GEEKS, INC.

      Defendants.

## VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

**COMES NOW**, the Plaintiff, U.S. Asia Global, Inc. ("USAG"), by and through undersigned counsel of record, pursuant to the Federal Rules of Civil Procedure, and files this Verified Complaint for Emergency Injunctive Relief and Damages.  This is the Plaintiff's first request for extraordinary relief.  In support of the causes of action stated herein, USAG would state unto the Court as follows:

### I.      PARTIES

1.      Plaintiff, US Asia Global, Inc. ("USAG") is a for profit corporation organized under the laws of the State of New York with its principal place of business located at 1449 37th Street, Suite 612, Brooklyn, NY 11218.[1]  Upon information and belief, all of the members of USAG are residents of the State of New York..

2.      Defendant, Global Geeks, Inc. ("Global"), is a for profit corporation organized under the laws of the State of New Jersey with a principal place of business located at 1256 North Church Street, Suites 3 and 4, Moorestown, New Jersey 08057.  Global may be served with process

---

[1] Until the Fall of 2019, USAG also operated out of an office located in the State of New Jersey, but for more than eight (8) months, USAG has operated exclusively out of its singular office located in Brooklyn, New York.

via Ahmad Loul, Global's chief executive officer and registered agent, at 416 Sicklerville Road, Suite D-2, Sicklerville, New Jersey 08081, or wherever he may be found. Upon information and belief, none of the members of Global are residents of the State of New York.

## II.   JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. § 1332 as the parties are completely diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to Plaintiff's claim(s) occurred in this judicial district and the personal property that is the subject of the action is being unlawfully retained in this judicial district.

## III.   BACKGROUND FACTS

5.      On or about February 11, 2020, the World Health Organization officially named the novel coronavirus originating out of Wuhan, China as "COVID-19".

6.      On or about February 29, 2020, the first American life was taken in the United States as the result of COVID-19.

7.      On or about March 1, 2020, New York State saw its first confirmed case of COVID-19 in New York City (in the borough of Manhattan), followed two (2) days later by the New York State's second confirmed case in Westchester County just north of New York City.

8.      On March 7, 2020, New York Governor Andrew Cuomo ("Governor Cuomo") declared a state of emergency.

9.      On or about March 11, 2020, the World Health Organization classified COVID-19 as a pandemic.

10.    During March and April of 2020 the numbers of confirmed cases in both the States of New York and New Jersey exploded into the hundreds of thousands, and confirmed deaths spiraled upward into the tens of thousands.

11.    According to the New York State Department of Health, by April 8, 2020, New York State alone had more than 143,000 confirmed cases of COVID-19.

12.    To date, New York State has confirmed more than 330,000 COVID-19 cases, with more than 21,000 deaths.

13.    In March and April 2020, Governor Cuomo, as well as local governments in the State of New Jersey and across the United States, issued several stay-at-home and/or shelter-in-place orders, and closed schools.

14.    As the number of COVID-19 cases spiked precipitously in March and April 2020, hospitals and medical providers in New York and New Jersey became overwhelmed.

15.    The critical lifesaving need for personal protective equipment ("PPE"), which includes, but is not limited to, masks, gloves, face shields, and gowns, increased rapidly and dramatically.

16.    This critical lifesaving need for PPE existed not only for health care providers and hospital workers, but also from first responders and individual citizens seeking out PPE to protect themselves and those with whom they work and associate.

17.    Upon information and belief, in early April 2020, a New York limited liability company registered with Secretary of State as SZN, LLC ("SZN") identified an opportunity to purchase and import into the United States masks and other PPE.

18.    Upon information and belief, Defendant Global contacted SZN desiring to purchase imported masks at a wholesale price for resale to New York State and others seeking the PPE.

3

19.     Global's chief executive officer is Abdul Loul.

20.     Global is a self-described "privately held responsible tech solutions company that specializes in consumer electronics and covers worldwide companies. We provide retailers, wholesalers, corporations and international traders with premier mobile services that range from device distribution and refurbishing to asset recovery solutions."

21.     Global operates offices in New Jersey, London, and Dubai.

22.     Upon information and belief, Global purchases and sells mobile phones and mobile phone parts, as well as offers repair and refurbishing solutions for same.

23.     Though not in the business of transacting in the importation, sale, or distribution of masks and PPE, Global believed that the wholesale purchase of masks from SZN, and others like SZN, and with the subsequent retail sale of same to other third parties, represented a viable business opportunity.

24.     Upon information and belief, Global had arranged to procure the PPE from SZN under written Purchase Orders ("POs") and to sell the PPE to State and City governments, health care providers, and individuals in need of PPE.

25.     In this transaction, SZN acted as a broker, locating a willing and able supplier (like USAG) to meet the needs of a willing and able buyer, Global.

26.     In exchange for locating and obtaining a suitable supplier and putting Global and the suppliers together, SZN collected a commission on the sale.

27.     Each of the suppliers made a profit, which represented the difference paid by Global for each of the respective shipments, and the individual supplier's cost of goods sold – including shipping, less SZN's commission fee.

28.     The costs of goods sold by the supplier was negotiated between all parties in a bona fide arm's length transaction, and was determined based primarily upon the price charged by the original equipment manufacturer ("OEM") for each shipment at issue.

29.     The price charged to Global by each supplier, by and through SZN, was likewise negotiated between all parties in a bona fide arm's length transaction, and was determined based primarily upon the cost of goods sold and the current market value for the PPE (in this case, the masks) of a similar type in the New York and New Jersey area at the time of the consummation of each deal.

30.     For all of the shipments herein at issue and discussed *infra*, for the product to be sold under the POs to Global, SZN utilized four (4) different and unrelated suppliers, including: Plaintiff USAG; a New York company known as "KoolerThings"; a New York company known as "Bargain Me Online".

## IV.    SHIPMENT NO. 1

31.     On April 19, 2020, Global executed a PO with SZN for the purchase of 70,000 masks at the price of $4.00 per mask ("Shipment No. 1").

32.     SZN successfully identified KoolerThings, who could supply the masks ordered by Global for Shipment No. 1.

33.     Global took delivery of Shipment No. 1 and accepted the goods on April 20, 2020 in  Global's storage area in Moorestown, New Jersey.

34.     Global paid in full the amount of $280,000.00 for Shipment No. 1.

## V.   <u>SHIPMENT NO. 2</u>

35.     Given the success of Shipment No. 1, Global executed another PO with SZN for a second shipment on April 19, 2020, this time for a quantity of 290,000 masks at the price of $4.00 per mask ("Shipment No. 2").

36.     SZN successfully identified Bargain Me Online, who could supply the masks ordered by Global for Shipment No. 2.

37.     Global took delivery of Shipment No. 2 and accepted the goods on April 20, 2020 in Global's storage area in Moorestown, New Jersey.

38.     Global paid in full the amount of $1,160,000.00 for Shipment No. 2.

## VI.   <u>SHIPMENT NO. 3</u>

39.     Given the success of Shipments Nos. 1 and 2, on April 22, 2020, Global amended a previously placed PO for a third shipment, this time for a quantity of 750,000 masks at the price of $3.00 per mask ("Shipment No. 3").

40.     The negotiated price per mask for Shipment No. 3 decreased by $1.00 from Shipments Nos. 1 and 2 as the cost to obtain masks from China decreased due to increased manufacturing and distribution of the PPE.

41.     SZN successfully identified Plaintiff USAG, who could acquire the masks by purchase and then supply the masks ordered by Global for Shipment No. 3.

42.     SZN is not affiliated with USAG.

43.     Of the three transactions that took place between Global and SZN, USAG was only the supplier on Shipment No. 3 and had no involvement whatsoever in Shipments Nos. 1 and 2.

44.     USAG acquired and owns all 750,000 masks associated with Shipment No. 3.

45.     Until payment by the end user is made, USAG retains ownership over the product.

46.    USAG purchased and then coordinated import of the 750,000 masks from China.

47.    Shipment No. 3 arrived at John F. Kennedy Airport in the United States on May 2, 2020, aboard three different Cathay Pacific Airways flights; each flight delivering 250,000 pieces.

48.    The Department of Homeland Security Entry Summary identifies the owner and importer of the product as "US ASIA GLOBAL INC".

49.    USAG was present to receive the product.

50.    USAG loaded its product aboard USAG trucks and drove them to Global's storage area in Moorestown, New Jersey.

51.    On May 4 and May 5, 2020, USAG caused the first 500,000 pieces to be transferred to Global's custody.

52.    The Delivery Order receipts are those of USAG.

53.    Global approved the delivery and received of the product from USAG.

54.    Global took custody of the product directly from USAG.

55.    SZN never owned or had possession of the product.

56.    Since USAG transferred the first 500,000 pieces into Global's custody on May 4 and May 5, 2020 and despite Global's written acceptance from USAG of all 500,000 pieces, USAG has now discovered that in fact, only 476,000 pieces were actually delivered, as unbeknownst to USAG and Global, 24,000 pieces were inadvertently retained by Cathey Pacific Cargo.

57.    Global took delivery of the 476,000 pieces of Shipment No. 3 from USAG and accepted the goods on May 4 and May 5, 2020 in Global's storage area in Moorestown, New Jersey.

58.    However, after accepting the goods and placing them in lock-down in Global's storage area in Moorestown, New Jersey, Global has stated its intent to terminate the PO, and

Global has refused to pay for any of the product associated with Global's executed PO for any of the 750,000 pieces under Shipment No. 3.

59.     Global has not made any payment for the 476,000 pieces transferred to, and now in, Global's custody in Global's storage area in Moorestown, New Jersey.

60.     Global has refused to pay for the remaining 274,000 pieces which were to be delivered by USAG to Global under the executed PO for Shipment No. 3.

61.     At the same time that Global has refused payment for the product and has stated that it does not want and is refusing the product, Global has refused to allow USAG access to retrieve its product being held in Global's storage area in Moorestown, New Jersey.

62.     USAG has made direct demand that Global allow USAG access to retrieve its product being held in Global's storage area in Moorestown, New Jersey.

63.     Global has refused to allow USAG access.

64.     USAG has made demand, by and through legal counsel, to Global's legal counsel that USAG be allowed access to retrieve its product being held in Global's storage area in Moorestown, New Jersey.

65.     Global's legal counsel has refused to allow USAG access.

66.     Global has now alleged that Shipment No. 2, supplied by Bargain Me Online, was not "CDC approved" and that Global therefore was not able to sell all of the pieces it purchased under Shipment No. 2.

67.     Global has demanded from SZN an immediate refund for the unsold product delivered by Bargain Me Online under Shipment No. 2 in the amount of $800,000.00.

68.     USAG had nothing to do with Shipment No. 2.

69.     USAG's only involvement with SZN or Global relates to Shipment No. 3.

70.     USAG informed Global Geeks that USAG did not provide the masks for Shipment No. 2 and, thus, withholding both payment and return of the goods from Shipment No. 3, was improper and unalwful.

71.     Nevertheless, in an apparent attempt to leverage payment from SZN related to Global's demand for reimbursement of Bargain Me Online's product under Shipment No. 2, Global has refused to allow USAG to retrieve the 476,000 pieces it delivered to Global under Shipment No. 3 which Global has refused to accept.

72.     While Global may or may not have cause to enter into a dispute with SZN and Bargain Me Online regarding Shipment No. 2, such dispute does not in any way involve USAG and Global's refusal to either pay for, or return Shipment No. 3 (476,000 masks).

73.     USAG is unconcerned with the dispute between Global and SZN regarding Shipment No. 2, and USAG simply wants to either be paid for its part in Shipment No. 3 or have the goods returned to it as the rightful owner.

74.     As it is clear that Global will never voluntarily pay USAG for Shipment No. 3, USAG owns the product being held in Global's storage area in Moorestown, New Jersey.

75.     As it is further clear that Global will never voluntarily pay USAG for Shipment No. 3, USAG must recover its product such that it is not damaged and so that it can expeditiously find a new buyer and mitigate its losses.

76.     As, thankfully, the number of confirmed cases of COVID-19 continues to decrease daily in the New York and New Jersey area —and as PPE continues to become more plentiful and subject to decreased demand— the value of Shipment No. 3  decreases every single day that it remains locked in in Global's storage area in Moorestown, New Jersey.

77.     Global's unlawful withholding of Shipment No. 3 is an intentional act of conversion against USAG.

78.     Global's withholding of Shipment No. 3 from USAG frustrates, and indeed destroys, a basic assumption and motivation for USAG's decision to obtain and ship —at its own cost— the masks that comprise Shipment No. 3 .

79.     USAG agreed to participate in the transaction with Global and SZN based entirely upon the then and present market value of PPE and masks at the time the order for Shipment No. 3 was placed, as well as the profit USAG stood to make from the sale of the masks to Global relative to USAG's cost of goods sold.

80.     While it is apparently Global's desire to hurt SZN, its acts of conversion and theft refusing to return Shipment No. 3 to USAG, the rightful owner - or pay for it - is substantially harming USAG.

## COUNT I:
## INJUNCTIVE RELIEF

81.     USAG repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Verified Complaint.

82.     USAG has a high likelihood of success upon the merits of its claims.

USAG owns the product being held by Global's in its storage area in Moorestown, New Jersey.

83.     If USAG is not granted extraordinary relief, it will be irreparably harmed.

84.     If USAG is not restored to immediate possession of the 476,000 masks delivered to Global under Shipment No. 3, USAG will be substantially damaged as the value of the masks within Shipment No. 3 decreases by the day.

85.   If USAG is not restored to immediate possession of the 476,000 masks delivered to Global under Shipment No. 3, USAG will be substantially damaged in that its reputation in the marketplace is being actively diminished.

86.   Additionally, as stated *supra*, the masks are fungible goods and there is an immediate and inherent risk that Global will sell, otherwise transfer, or intentionally or unintentionally damage the product, to the sole and exclusive detriment of USAG

87.   USAG has located prospective new buyers for Shipment No. 3 who may be willing to pay a price in excess of USAG's costs to import Shipment No. 3.  While this amount is less than what USAG would get from Global's agreed upon payment for Shipment No. 3, it could prevent a wholesale loss to USAG.

88.   The necessity of immediately restoring USAG to possession of its own property far outweighs any threatened harm to Global as it has rejected the product, refused payment, and has no claim of ownership over the product.

89.   The granting of the injunctive relief herein sought will not disserve the public interest; rather, it will reinforce public confidence in our system of commerce, property rights, and lawful business practices.

90.   USAG asks this Court for a mandatory injunction, in the form of a temporary restraining order and/or preliminary injunction requiring Global to immediately allow USAG access to retrieve the 476,00 masks it owns that are being held by Global, which were previously delivered under Shipment No. 3  by USAG, and such other and further extraordinary relief the Court deems just and proper.

91.   USAG requests the Court immediately set, following the issuance of the herein requested threshold injunctive relief, a hearing on the merits of the injunctive relief sought.

## COUNT II:
## CONVERSION

92.     USAG repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Verified Complaint.

93.     USAG acquired and owns all 750,000 masks associated with Shipment No. 3.

94.     USAG purchased and then coordinated import of the 750,000 masks from China.

95.     Until payment by the end user is made, USAG retains ownership over the product.

96.     Global knowingly and intentionally took possession of these 476,000 pieces and is keeping the product in its storage area in Moorestown, New Jersey.

97.     To date, Global has rejected the product and failed and refused to pay any money for any portion of Shipment No. 3.

98.     Global, itself and through legal counsel, has stated its intent to terminate the PO for Shipment No. 3 and has indicated it will never voluntarily pay for any of the product associated with Global's executed PO for the 750,000 pieces under Shipment No. 3 .

99.     Despite this intent to terminate the PO for Shipment No. 3, Global has failed and refuses to return the product delivered by USAG for Shipment No. 3 to USAG.

100.    USAG retains all ownership right to the product delivered to Global under Shipment No. 3.

101.    USAG has the right to immediate possession of Shipment No. 3.

102.    Upon information and belief, Global's failure and refusal to return the product delivered by USAG for Shipment No. 3 to USAG is an apparent attempt to leverage payment from SZN related to Global's demand for reimbursement of Bargain Me Online's product under Shipment No. 3.

103.    USAG had no involvement in Shipment No. 3.

104.    The product delivered by USAG for Shipment No. 3 has nothing to do with Bargain Me Online.

105.    Global has willfully and intentionally interfered with USAG's right to immediate possession of its product under Shipment No. 3.

106.    Global currently exercises dominion and control over Shipment No. 3, to the exclusion of USAG's current and ongoing ownership rights in Shipment No. 3.

107.    Global's continued interference with USAG's right to possession, and Global's affirmative and tortious conduct in unlawfully holding USAG's property, has caused USAG to be damaged.

108.    Global has committed the act of conversion over the product owned by USAG.

109.    As the value of Shipment No. 3 decreases each day, USAG will continue to be damaged by Global's unlawful act of conversion.

110.    USAG is entitled to the immediate return of Shipment No. 3 and for damages against Global for its unlawful act of conversion.

## COUNT III:
## REPLEVIN and/or DETINUE

111.    USAG repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Verified Complaint.

112.    As set forth *supra*, Shipment No. 3, comprising 476,000 masks, rightfully belongs to and is owned by USAG as Global has terminated the Shipment No. 3 PO and has failed and refused to pay for Shipment No. 3.

113.    USAG hereby asserts its rights to immediate replevin and/or detinue to recover its property comprising of 476,000 masks being held by Global in Global's storage area in Moorestown, New Jersey.

114.     USAG asserts that the masks are fungible goods and that there is an immediate and inherent risk that Global will sell, transfer, or otherwise damage, the product to the sole and exclusive detriment of USAG.

115.     USAG asserts that good cause exists for the issuance of an immediate order granting USAG possession of the 476,000 masks delivered by USAG under Shipment No. 3, without notice.

116.     USAG demands that, in the event the Court does not grant and order immediate possession of the 476,000 masks delivered by USAG under Shipment No. 3 , that Global be required to post such bond as is necessary to secure USAG's financial position in an amount equal to not less than $1,428,000.00 plus interest.

## COUNT IV:
## UCC VIOLATION

117.     USAG repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Verified Complaint.

118.     Global's purchase of Shipment No. 3 including the product provided from USAG is for goods as defined by the applicable Uniform Commercial Code and therefore subject to same.

119.     USAG tendered and delivered goods conforming to the agreement between the parties.

120.     Global freely accepted 476,000 pieces from USAG under Shipment No. 3.

121.     Global did not, at any time, reject any portion of Shipment No. 3 for any reason, including as non-conforming goods.

122.     Global continues to hold Shipment No. 3 in its exclusive possession without paying for same.

123.    USAG demands and is entitled to immediate payment, in the amount of $1,428,000.00 plus interest for Shipment No. 3.

124.    In the alternative, USAG demands the immediate return such that it may resell the goods pursuant to the applicable Uniform Commercial Code.

## COUNT V:
## QUANTUM MERUIT and/or UNJUST ENRICHMENT

125.    USAG repeats and realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs of this Verified Complaint.

126.    Global currently retains in its possession good and valuable property owned by USAG in the form of 476,000 of the 750,000 masks to have been purchased by Global under the Shipment No. 3 PO.

127.    Shipment No. 3 is valued at $3.00 per mask, for a total of $1,428,000.00.

128.    USAG provided Global with 476,000 of the 750,000 masks purchased by Global under the Shipment No. 3 PO in good faith based upon Global's agreement to accept and pay for Shipment No. 3.

129.    It is Global's stated purpose to resell the masks and, as such, Shipment No. 3 constitutes good and valuable inventory for Global to sell –providing Global with a benefit.

130.    Global freely accepted Shipment No. 3 from USAG and knowing that USAG — whether directly or through the broker, SZN— expected remuneration.

131.    To date, Global has failed and refused to provide USAG with such remuneration.

132.    To date, Global has failed and refused to allow USAG access to retrieve its product.

133.    It would be unjust for Global to retain the benefit of Shipment No. 3 without providing compensation for same.

134.    Such compensation is an amount not less than $1,428,000.00, which constitutes the amount Global agreed to pay for the 476,000 masks delivered under Shipment No. 3.

135.    USAG will be substantially harmed if Global is allowed to retain Shipment No. 3 without payment.

136.    Global is causing significant damage each day that it prevents USGA from recovering its product.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, U.S. Asia Global, Inc. prays that:

1.    Process issue against GlobalGeeks, Inc., requiring it to answer within the time period specified by applicable law;

2.    The Court immediately, pursuant to Fed. R. Civ. P.65, issue and enter a temporary restraining order and/or preliminary injunction in favor of U.S. Asia Global, Inc. requiring GlobalGeeks, Inc. to immediately allow U.S. Asia Global, Inc. access to GlobalGeeks, Inc.'s storage area in Moorestown, New Jersey so that U.S. Asia Global, Inc. may retrieve its product presently and unlawfully being held by GlobalGeeks, Inc. in its custody;

3.    The Court award U.S. Asia Global, Inc. all costs and expenses incurred in retrieving the product presently and unlawfully being held by GlobalGeeks, Inc. in its custody;

4.    The Court award U.S. Asia Global, Inc. all attorney's fees and expenses incurred in bringing this litigation to recover the product presently and unlawfully being held by GlobalGeeks, Inc. in its custody

5.      The Court set an expedited hearing to convert the temporary restraining order into a preliminary injunction and/or to convert the preliminary injunction into a permanent injunction.

6.      The Court issue an order and/or writ granting immediate possession of the subject property delivered by U.S. Asia Global, Inc. and being unlawfully held by GlobalGeeks, Inc. under Shipment No. 3;

7.      GlobalGeeks, Inc. pay U.S. Asia Global, Inc. $1,428,000.00, which represents the agreed upon value of Shipment No. 3;

8.      The Court enter judgment in favor of U.S. Asia Global, Inc. on all causes of action asserted in an amount not less than $1,428,000.00, exclusive of applicable interest, costs, expenses, and attorney fees;

9.      The Court award U.S. Asia Global, Inc. all damages, whether compensatory, consequential, incidental, statutory, and/or punitive to which it may be entitled as against GlobalGeeks, Inc.;

10.      The Court award U.S. Asia Global, Inc. its reasonable attorney fees and costs associated with brining the instant action; and

11.      The Court grant such other and further relief as this Court deems necessary and proper, whether at law or in equity.

DATED: May 11, 2020.

                              Respectfully submitted,

                              **GLANKLER BROWN, PLLC**

                              By: /s/ S. Joshua Kahane
                                     S. Joshua Kahane (TN# 23726) *
                                     Aubrey B. Greer (TN# 35613) *
                                     6000 Poplar Ave., Suite 400
                                     Memphis, Tennessee 38119
                                     Telephone:     (901) 576-1715

Facsimile:      (901) 525-2389
jkahane@glankler.com
agreer@glankler.com

\* - Indicates admission *pro hac* pending

**AHMAD ZAFFARESE LLC**

By: /s/ Aleena Sorathia
        Joseph E. Zaffarese (NJ # 043121999)
        Aleena Sorathia (NJ# 129152014)
        One South Broad Street, Suite 1810
        Philadelphia, PA 19107
        Telephone:      (215) 496-9373
        jzaffarese@azlawllc.com
        ASorathia@azlawllc.com

        *Attorneys for Plaintiff, U.S. Asia Global,
        Inc.*

## VERIFICATION

STATE OF NEW YORK

COUNTY OF KINGS


I, Joseph Weiner, Manager of U.S. Asia Global, Inc., make oath that I have read the foregoing Verified Complaint and that the same is true of my own knowledge, except to matters stated to be upon information and belief, and as to those matters, I believe them to be true.


Executed this _11_ day of May, 2020.

Name


STATE OF NEW YORK

COUNTY OF KINGS


Before me, notary of the state and county aforesaid, personally appeared Joseph Weiner, with whom I am personally acquainted (or proved to be on the basis of satisfactory evidence), and who, upon oath, acknowledged himself and executed the foregoing document for the purpose therein contained.


**WITNESS** my hand and seal at office on this, this _11_ day of May, 2020.

Notary Public

My Commission Expires:

MOSHE BADALOV
NOTARY PUBLIC, State of New York
No. 01BA6167968
Qualified in Kings County
Commission Expires June 4, 20 23

19